# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WHITE PEARL INVERSIONES, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 07 C 6365 |
| | ) | |
| v. | ) | Wayne R. Andersen |
| | ) | District Judge |
| CEMUSA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the motion of the Defendant, Cemusa, Inc. ("Cemusa" or "Defendant") to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is granted.

## BACKGROUND

Plaintiffs White Pearl Inversiones ("White Pearl") and Sanlo Corporation ("Sanlo," collectively "Plaintiffs") originally filed a ten count complaint against Cemusa in the Circuit Court of Cook County. Cemusa then removed this case to this court on November 9, 2007. On March 11, 2009, this court granted Cemusa's motion to dismiss the entire complaint, dismissing the entirety of Plaintiffs' claims with prejudice. On March 25, 2009, Plaintiffs moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), or, in the alternative, 60(b). This court granted Plaintiffs' motion for reconsideration on April 6, 2009, insofar as Plaintiffs were given leave to file an amended complaint.

The dispute in the instant case involves the payment of commissions by Cemusa to Plaintiffs for services Plaintiffs allegedly rendered to Cemusa in order to facilitate Cemusa's

successful bid for a contract with New York City to build street furniture, including bus stop shelters and public restrooms.

As noted in the opinion dated March 11, 2009, Cemusa is a subsidiary of a Spanish corporation that builds and installs street furniture in the United States. The street furniture typically bears advertising space that is sold to advertisers, which creates a revenue stream for whoever installs it. Winning a bid to install street furniture is often competitive and involves a certain amount of lobbying. Accordingly, in 2002 and 2003 Cemusa discussed with Plaintiffs a strategy for putting together a successful bid in response to a request for proposal ("RFP") to build street furniture that Cemusa expected New York City to issue. Pursuant to those discussions Cemusa entered into an agreement (the "Pre-RFP Agreement") with the Plaintiffs on March 25, 2003. The relevant portions of the Pre-RFP Agreement provide that the Plaintiffs would:

(i) In anticipation to the release of the RFP, introduce Cemusa as an important International company operating with the design, manufacture, installation, leasing and management of street furniture in major markets, and as a competent party to provide such services to the City of New York within the same standards practices by competitors such as J.C. Decaux, Clear Channel and Viacom

(ii) Provide advice and guidance on the strategy to be adopted by Cemusa, as it relates to the City of New York street furniture and local government concerns, starting on February, 2003.

Am.Compl., Ex. 1 at 2. The Pre-RFP Agreement provided that Cemusa was obligated to pay Plaintiffs $240,000 in exchange for services listed above, and Cemusa did pay this sum.

Further, the Pre-FRP agreement contemplated the creation of a Master Consulting Agreement (the "Master Agreement"), which would govern future agreements between the parties regarding the release of RFPs to Cemusa. The relevant language of the Pre-RFP Agreement stated:

> In the event a RFP is released, White Pearl and Cemusa agree to act in accordance with the terms and conditions set forth in the Master Consulting Agreement, to be agreed in the near future among White Pearl, Cemusa and Sanlo Corp.

Am. Compl., Ex. 1 at 2.

On April 1, 2003, Cemusa, White Pearl, and Sanlo entered into the Master Agreement, which provided the terms that would govern any subsequent agreement between the parties in response to future RFPs. The Master Agreement included a percentage compensation provision, which stated, in relevant part:

> Percentage Compensation. The compensation (the "Percentage Compensation") payable to the Consultants, unless otherwise provided in the RFP Agreement, shall be in an amount equal to three and three-fourth percent (3.75%) of the Net Advertising Revenue, as hereinafter defined, received by Cemusa under the applicable Service Contract.

Am. Compl., Ex. 2 at 2-3. Compensation under this agreement would be conditional upon the success of Cemusa's bid in response to the RFP.

The Master Agreement also included a termination clause, which enabled either party to terminate the contract for any reason provided that the other party was given 30 days prior written notice. It also provided that,

> Upon termination of this Agreement for any reason, all RFP Agreements then in effect shall terminate as well; provided, however, that any such termination shall not terminate the consultants' right to receive ongoing compensation as provided herein or in an RFP agreement then in effect.

Am. Compl., Ex. 2 at 7.

Following the signings of the Pre-RFP Agreement and Master Agreement, Plaintiffs allege that they engaged in a number of activities designed to enhance Cemusa's efforts to develop a successful bid in response to a potential future RFP issued by New York City. Plaintiffs claim to have hired, at their own expense, a number of outside consultants who conducted lobbying and strategy formulation to improve Cemusa's profile in New York City.

Further, Plaintiffs' claim that their representatives traveled to New York and Spain to coordinate the strategy designed to help secure an RPF and undertake internal lobbying within Cemusa's parent company. Plaintiffs claim that expenses for such services, paid entirely out of pocket, exceeded $442,000.

On February 17, 2004 Cemusa gave notice to Plaintiffs that it was terminating the Master Agreement. Following the termination of the Master Agreement, New York City reissued an RFP. During this time, Plaintiffs continued to work on behalf of Cemusa, performing internal lobbying to ensure that Cemusa would respond to the RFP. Cemusa was, in fact, rewarded the NYC Service Contract in September 2005.

Despite its success in securing the NYC Service Contract, Cemusa did not pay any percentage of the contract price to Plaintiffs. Throughout the period following the termination of the Master Agreement, Cemusa, White Pearl, and Sanlo engaged in discussions regarding a new consulting agreement. While the parties dispute the existence of an actual agreement, no final copy was signed by the parties.

This lawsuit is based on the percentage compensation provision in the Master Agreement. Because Cemusa ultimately won the bid to provide street furniture to New York City, White Pearl and Sanlo claim that they are entitled to 3.75% of the advertising revenue. Plaintiffs further allege that they have not been paid this amount. Cemusa maintains that it has no outstanding obligations to Plaintiffs. Although Plaintiffs' initial complaint was dismissed with prejudice, Plaintiffs were granted leave to file an amended complaint. Opinion and Order dated March 11, 2009. In accordance with that order, Plaintiffs filed a fourteen count amended complaint which asserts claims for: 1) Breach of Contract; 2) Breach of the Covenant of Good Faith and Fair Dealing; 3) Promissory Estoppel; 4) Common Law Fraud; 5) Equitable Estoppel; 6) Quantum

Meruit; 7) Unjust Enrichment – Constructive Trust; 8) Enforcement of Settlement Agreement; 9) Declaratory Relief (Plaintiffs are entitled to Percentage Compensation); 10) Declaratory Relief (Plaintiffs are not in violation of the New York City Administrative Code); 11) Declaratory Relief (Severability Clause of the Master Agreement); 12) Accounting; 13) Fraud in the Inducement; and 14) Reformation.

Cemusa brings the instant motion to dismiss the entirety of Plaintiffs' claims contending that Plaintiffs' amended complaint does not remedy the defects of the original complaint, which was dismissed in this court under Federal Rule of Civil Procedure 12(b)(6). As in its initial motion to dismiss, Cemusa alleges that it terminated the Master Agreement prior to the issuance of the RFP by New York City, as it had a right to do according to the terms of the Master Agreement. Accordingly, Cemusa asserts that the terms of the Master Agreement are of no force and effect and cannot form the basis for Plaintiffs' contract claims. Furthermore, as no RFP had been issued at the time of the termination, Cemusa contends that there was no RFP agreement in effect at the time of termination which created any ongoing obligation to Plaintiffs. Consequently, Cemusa contends that any work done by Plaintiffs on behalf of Cemusa was done either pursuant to the Pre-RFP Agreement or at Plaintiffs' own risk. Finally, Cemusa states, and Plaintiffs do not dispute, that Plaintiffs have been paid the entire amount to which they were entitled under the pre-RFP Agreement ($240,000).

## **LEGAL STANDARD**

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

5

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J. Branch Corp.*, 176 F.3d. 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegation contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of a action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint must describe the claim with sufficient detail as to "give the Defendants fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances of fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Generally speaking, this standard of particularity requires that the plaintiff specify the "who, what, when, where, and how" of the alleged fraud. *GE Capital Corp. v. Lease Resolution Corp.* 128 F.3d 1074, 1078 (7th Cir. 1997). Simple conclusory allegations of fraud do not satisfy the Rule 9(b) standard. *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604-05 (7th Cir. 2005).

## **DISCUSSION**

Plaintiffs allege 14 separate counts in their amended complaint, including four new counts. However, as in the original complaint, the crux of Plaintiffs' amended complaint is Plaintiffs' contention that they had a valid, enforceable contract with Cemusa that entitled them to 3.75 % of the Net Advertising Revenue from Cemusa's services contract to build street furniture for New York City. Plaintiffs' amended complaint fails to allege that they performed services pursuant to a contract entitling them to compensation consistent with the terms of the Master Agreement. Further, because the Master Agreement was validly terminated before the issuance of the RFP by New York City, there was no valid contract enforceable at the time the RFP was issued that entitled Plaintiffs to the compensation they seek. Moreover, Plaintiffs' allegations of fraud against Cemusa are insufficiently pled. Therefore, because Plaintiffs' complaint fails to allege services performed pursuant to an RFP agreement and fails to adequately plead fraudulent behavior by Cemusa, the amended complaint is dismissed in its entirety.

### I. **Plaintiffs failed to sufficiently allege the performance of services pursuant to a contract that would entitle them to the percentage compensation scheme set forth in the Master Agreement**

Plaintiffs' contractual claims are dismissed because Plaintiffs, in their amended complaint, do not allege the existence of an RFP agreement for which they performed services entitling them to further compensation. In the amended complaint, Plaintiffs allege a number of services performed on behalf of Cemusa after April 1, 2003, the date the Master Agreement was signed. In claiming to perform these services—including but not limited to, hiring lobbyists and strategists to help secure a future RFP from NYC, lobbying internally within Cemusa's parent company, and overseeing the strategizing and lobbying services between Cemusa's offices in

Spain and New York City on behalf of Cemusa—Plaintiffs allege that they spent over $442,000. However, Plaintiffs fail to allege that they performed any of these services or undertook any of these costs pursuant to an active RFP agreement. As neither New York City nor any other entity issued an RFP to Cemusa prior to the performance of such services, there was no RFP agreement in place under which Plaintiffs were providing contracted for services.

Instead, Plaintiffs allege that the services were performed pursuant to the initial contract, which integrated the terms of the Master Agreement. This allegation simply does not hold water. The terms of the Pre-RFP Agreement and the Master Agreement are clear, requiring the issuance of a RFP and the creation of a RFP agreement between the parties for the Master Agreement's compensation provision to come into effect. Without an actual RFP issued to Cemusa and a corresponding RFP agreement, the agreement to pay the percentage compensation plan in the Master Agreement was just an agreement to agree in the future.

As this case is before the court on a motion to dismiss, Plaintiffs must allege that they performed services pursuant to a valid contract to withstand the motion to dismiss. Plaintiffs fail to do so in their breach of contract claims. In light of this defect in Plaintiffs' amended complaint, a number of Plaintiffs counts are also insufficiently pled. Accordingly, because the alleged services provided by Plaintiff were not performed pursuant to a valid RFP agreement, Counts I (breach of contract), II (breach of covenant of good faith and fair dealing), VI (quantum meruit), VII (unjust enrichment), IX (declaratory relief – percentage compensation), Count XI (declaratory relief – severability clause of the Master Agreement), XII (accounting), and XIV (reformation) are hereby dismissed.

**II.     Plaintiffs' promissory estoppel claim is insufficiently pled**

Plaintiffs allege that Cemusa promised to compensate Plaintiffs for work they had

8

performed on behalf of Cemusa both before and after the termination of the Master Agreement. In light of Cemusa's failure to pay them in any form, Plaintiffs seek damages for the broken promise. However, Plaintiffs' claim is insufficient to make a claim for promissory estoppel. Under Illinois law, a promissory estoppel claim requires that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Ross v. May Co.*, 377 Ill.App.3d 387, 393 (Ill. 2007). Furthermore, a plaintiff's reliance must be reasonable and justifiable. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 310, 321 (Ill. 1990).

Plaintiffs claim that, following the termination of the Master Agreement, Cemusa promised to compensate Plaintiffs for work already done and work to be done in the future to convince shareholders and directors to submit a response to the released New York City RFP. Plaintiffs contend that it was in reliance on this promise that they continued to perform services for Cemusa. Plaintiffs further allege that their reliance was expected and foreseeable based on the ongoing negotiations for a new consulting agreement and Plaintiff's continued work on their behalf. Finally, Plaintiffs contend that they relied on Cemusa's promise to their detriment, spending time and money in performing services for Cemusa without being compensated.

Plaintiffs' amended complaint fails to identify an unambiguous promise to compensate Plaintiffs. Plaintiffs refer to the negotiations surrounding a possible new consulting agreement between the parties, noting a discussion at the conclusion of these discussions in which Plaintiffs were allegedly "assured by Cemusa that they would be compensated for their hard work." Am. Compl., at 11. This assurance, in the context of the on-going negotiations between the parties, is not an "unambiguous" promise. It contained no actual details of how and when compensation

9

would be paid. It created no obligations. The alleged statement by Cemusa was not a sufficient basis for a promissory estoppel claim.

Without alleging the existence of an unambiguous promise on which they relied, Plaintiffs' pleading is insufficient. Therefore, Count III of the amended complaint is hereby dismissed.

### III. Plaintiffs failed to sufficiently plead fraud and fraud in the inducement

Counts IV and XIII of the amended complaint allege fraud and fraud in the inducement, respectively. Although Plaintiffs' amended complaint does remedy some of the defects of its original fraud allegations, it still fails to meet the heightened pleading standards for fraud. Plaintiffs' amended complaint includes times and dates of the contact between Cemusa and Plaintiffs. However, Plaintiffs still do not allege the existence of any misrepresentation by Cemusa. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992-3 (7th Cir. 1991) (affirming district court's dismissal of a fraud claim because it did not allege the specific content of the misrepresentation). Plaintiffs' amended complaint alleges neither a plan nor a scheme, nor any ulterior motive held by Cemusa. Instead, Plaintiffs allege that there was an agreement to enter an agreement between Plaintiffs and Cemusa to share advertising revenue if a specific situation arose in the future. Cemusa terminated the agreement, as Plaintiffs acknowledged was within Cemusa's rights, before that situation came about. With only those the bare facts alleged, Plaintiffs jump to the conclusion that Cemusa defrauded them. For the same reasons as the opinion of March 11, 2009, Plaintiffs' amended complaint does not meet the heightened pleading standards for fraud under Rule 9(b). *Id.*; *see also Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("Mere

allegations of fraud… averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements.").

Plaintiffs' fraud in the inducement allegation is also insufficiently pled. Plaintiffs allege that they entered the contracts under the belief that they would be paid according to the Master Agreement's percentage compensation plan. Because Cemusa terminated the contract before such payment plan could take effect, Plaintiffs conclude that Cemusa misrepresented its intentions in order to induce Plaintiffs into entering the contracts. However, as previously noted, the termination was within Cemusa's rights. The termination alone, without any evidence of a misrepresentation designed to induce Plaintiffs to perform services without ever having to pay Plaintiffs, is insufficient to plead fraud in the inducement.

Accordingly, Counts IV and XIII of Plaintiffs' amended complaint are hereby dismissed.

**IV.    Plaintiffs failed to sufficiently plead the elements of equitable estoppel**

Count V of Plaintiffs' amended complaint alleges that Cemusa should be equitably estopped from terminating the Master Agreement under the terms of the pre-RFP Agreement and the Master Agreement. "The elements for equitable estoppel include (1) an action or non-action that induces (2) reliance by another, either in the form of action or non-action, (3) to his or her detriment." *St. Paul v. Mercury Ins. Co. v. Viking Corp.*, 539 F.3d 623, 628 (7th Cir. 2008) (citing *Russ v. Russ*, 734 N.W.2d 874, 885 (Wis. 2007)).

Plaintiffs allege that they relied on the good faith of Cemusa in performing their obligations under the Pre-RFP Agreement and the Master Agreement. As a result of this reliance, Plaintiffs claim that they lost the compensation owed to them under the Master Agreement. However, as determined above, the work performed by Plaintiffs in supposed reliance on the


11

Master Agreement was not done pursuant to any RFP Agreement under which the percentage compensation terms of the Master Agreement would be included.

Furthermore, as this court mentioned in the earlier opinion, Plaintiffs' reliance on the Master Agreement was unjustified. The Master Agreement provided that either party had the right to terminate the agreement upon 30 days prior written notice. Plaintiffs even acknowledged that Cemusa had that right. Plaintiffs were already compensated for the services performed under the Pre-RFP agreement. Without any pending RFP contracts at the time the Master Agreement was terminated, Cemusa had no outstanding obligations to pay Plaintiffs. Accordingly, any services Plaintiffs allege to have performed beyond the Pre-RFP Agreement were undertaken at their own risk. Any reliance on the Master Agreement, knowing that Cemusa could terminate at any time, was therefore unjustified. Accordingly, Count V of Plaintiffs' amended complaint is hereby dismissed.

### V. The totality of the pleadings and exhibits indicates that there was no valid settlement agreement between the parties

Count VIII of Plaintiffs' amended complaint asks the court to enforce an alleged settlement agreement between the parties in which Cemusa allegedly offered to execute a new Consulting Agreement with Plaintiffs entitling Plaintiffs to up to $2 million. Plaintiffs allege that they accepted Cemusa's offer, and subsequently, Cemusa wrongfully revoked the offer. However, the pleadings and exhibits indicate that their was no meeting of the minds, and, hence, no agreement.

Settlement agreements are contracts that are interpreted as any other contract would be. *See People ex rel. Dept. of Public Health v. Wiley*, 843 N.E.2d 259, 268 (Ill. 2006). Accordingly, settlement agreements require a "meeting of the minds" regarding the material terms of the agreement. *Abbot Labs v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). It has

been held that "anticipation of a more formal writing does not nullify an otherwise binding mutual agreement," and "informal writings between parties can constitute a binding settlement agreement. *Id.* at 388 (citing *Dawson v. General Motors Corp.*, 870 F.2d 423, 425 (7th Cir. 1989)). However, "informal writings must still manifest each party's intent to be bound by the material terms proposed." *Abbot Labs.*, 164 F.3d at 389.

Plaintiffs claim that the settlement proposal by Cemusa and agreed upon by Plaintiffs bound all parties to the terms of that agreement. However, the exhibits attached to the amended complaint indicate that Cemusa did not intend to be bound by the original proposal. Cemusa originally sent Plaintiffs an unsigned proposed settlement agreement attached to an email referring to the proposal as a "borrador," or rough draft. Am. Compl., Ex. 7. Further, Cemusa notified Plaintiffs in subsequent communications that it was still working with its attorneys on the settlement agreement. Am. Compl., Ex. 8. Finally, in an email sent on October 8, 2004, Cemusa indicated that, as far as it was concerned, no satisfactory draft that complied with New York law existed. Am. Compl., Ex. 10.

It is evident from the parties' correspondence that no meeting of the minds actually occurred. Although it is possible for an informal writing to constitute a valid and enforceable contract, in the immediate case the context in which the proposal sent to Plaintiffs does not suggest a mutual intention to be bound by the material terms of that proposal. In their amended complaint Plaintiffs merely conclude that a contract was formed. Therefore, Plaintiffs' allegation that a valid, enforceable settlement agreement existed is contradicted by the exhibits regarding such an agreement. Accordingly, Count VIII of Plaintiffs' amended complaint is hereby dismissed.

### VI. The legality of the Master Agreement is moot

Because Plaintiffs fail to sufficiently plead the existence of a contract for which they should be compensated, the issue of the legality of that alleged contract under the NYC Code is moot. Therefore, Count X of Plaintiffs' amended complaint is hereby dismissed.

### CONCLUSION

For the reasons set forth above, Cemusa's motion to dismiss [72] is granted in its entirety. This is a final and appealable order and this case is hereby terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: July 16, 2010